UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STONE DONG FAN, | CASE NO. C11-0718-RSM |
| Plaintiff, | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss. Dkt. # 14. Having carefully reviewed the motion, Plaintiff's response, (Dkt. # 23), Defendant's reply,(Dkt. # 24), and Plaintiff's "Motion for Reply" and "Motion for Reply Again," (Dkt. ## 25,26), along with balance of the record, the Court GRANTS Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND

This case arises out of the arrest and conviction of *pro se* Plaintiff Stone Dong Fan ("Plaintiff") in his native country of China in or around 1983, at a time when he was a resident

ORDER - 1

and citizen of that country. Plaintiff claims that he visited the U.S. consulate in Shanghai at some point in 1982 in order to discuss the possibility of studying in the United States and to relay information to U.S. officials regarding Chinese suppression of political dissidents. The U.S. consul at the time – David Hess – allegedly expressed suspicion that the Chinese government had "bugged" the consulate building, thereby permitting Chinese officials to listen in on conversations taking place within the building. After expressing this suspicion, Plaintiff claims that Hess asked him to engage in a "sham conversation" during which Plaintiff would pretend to pass Hess an "official" Chinese document. In the event Chinese officials subsequently questioned or punished Plaintiff in connection with the "sham conversation," the U.S. would take this as evidence that the consulate building was, in fact, "bugged."

Although Plaintiff expressed reluctance to participate in such a "sham conversation" in light of the potential consequences, Hess allegedly stated that the United States would come to Plaintiff's assistance in the event he was arrested by the Chinese government. This assurance, Plaintiff claims, convinced him to participate in the "sham conversation" and to pretend that he was passing an "official" Chinese document to Hess.

After participating in this "sham conversation," Plaintiff claims that he was arrested by Chinese police and charged with the crime of passing an official document. Plaintiff claims that he was sentenced to twelve years of imprisonment in a Chinese labor camp in connection with that charge. Although Plaintiff claims that "[t]he United States government did its best to rescue" him – including overtures from President Ronald Reagan to the Chinese government – he alleges that the U.S. never came forward with exculpatory evidence regarding the nature of the "sham conversation." Had the United States come forward with this evidence, Plaintiff claims that "he would not have been wrongfully convicted in China." Dkt. # 4 at 4.

1       Following Plaintiff's release from prison in or around 1995, he claims to have attained

2 U.S. Citizenship, and Plaintiff has now taken up residence in the United States. Plaintiff claims

3 that he has made numerous informal attempts to obtain the assistance of the U.S. government in

4 clearing his name in China.

### III. PROCEDURAL BACKGROUND

6       Plaintiff initiated the instant action on April 27, 2011, seeking a writ of *coram nobis*,

7 damages, and declaratory relief to remedy the negligence and procedural due process violations

8 that he claims were committed by U.S. officials in connection with his conviction. Dkt. # 1.

9       On October 5, 2011, Defendant moved to dismiss the Complaint pursuant to Federal

10 Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. # 14. Plaintiff filed a response on

11 December 19, 2012, (Dkt. # 23), and Defendant filed a reply on December 22, 2012, ( Dkt. # 24).

12 Plaintiff later submitted two additional filings: one entitled "Motion for Reply," (Dkt. # 25), and

13 another entitled "Motion for Reply Again," (Dkt. # 26). The Court construes Dkt. ## 25 and 26

14 to be one unified surreply.[1]

15       In his response, Plaintiff purports to amend his complaint by including additional

16 allegations of fact and a claim for fraud. Dkt. # 23. Given the latitude generally afforded to *pro*

17 *se* litigants, *Haines*, 404 U.S. at 520, the Court shall consider the version of the complaint set

18 forth in the response – which the Court will hereafter refer to as the "Amended Complaint" – as

19 the operative pleading in this case. In the Amended Complaint, Plaintiff makes clear that the

20 remedy he seeks to obtain through this litigation is "some written acknowledgment" from the

---

[1] Pursuant to Local Rule CR 7(g), a party may file a surreply only for purposes of striking material contained in a reply brief. Here, although Plaintiff's surreply does not seek to strike material contained in the reply, and is therefore procedurally improper, Defendant has not moved to strike it. Given the absence of such opposition, along with the latitude generally afforded to *pro se* litigants, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court shall consider the surreply in connection with the instant motion.

United States government that Plaintiff's Chinese imprisonment resulted from a failure on the part of U.S. officials to come forward with exculpatory evidence. Alternatively, Plaintiff seeks a declaratory judgment that Defendant violated his due process rights, along with an award of damages in the amount of $50 million.

As explained below, the Court assumes for purposes of the instant Motion that all of the facts alleged by Plaintiff are true. Although Defendant moves to dismiss this case on legal grounds, the Court notes that Defendant has not disputed any of Plaintiff's factual allegations.

## IV. STANDARD OF REVIEW

### A. Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Such dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). The Court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and

plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 248 (citations omitted). Therefore, a Court must not dismiss a complaint with prejudice unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957); *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

B. <u>Subject Matter Jurisdiction</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). They possess only that power authorized by United States Constitution and statute, which is not to be expanded by judicial decree. *Id*. The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction. *Id.* When considering a motion to dismiss pursuant to Rule 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Furthermore, the United States is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act ("FTCA") provides a limited waiver of the federal government's sovereign immunity from liability for negligent or wrongful acts of its employees in certain circumstances. 28 U.S.C. § 1346(b)(1); *United States v. Olson*, 546 U.S. 43, 44 (2005). The FTCA is the exclusive remedy for individual plaintiffs

seeking damages against the federal government for any alleged tortuous activities of governmental employees acting within the scope of employment. *See* 28 U.S.C. §§ 2674, 2679(b)(1); *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

An action under the FTCA can be instituted only after an administrative claim is presented to the appropriate Federal agency and the claim is denied either actually or constructively by the agency's failure to act upon the claim within six months. 28 U.S.C. § 2675(a); *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992). Under the FTCA, a claimant must present his or her administrative claim to the appropriate Federal agency within two years after the claim accrues, or the "tort claim against the United States shall be forever barred." 28 U.S.C. § 2401(b). Because such exhaustion is jurisdictional in nature, it may not be waived. *See Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985).

## V. ANALYSIS

### A. *Coram Nobis*

Although the bulk of the Complaint relates to Plaintiff's claim for a writ of *coram nobis*, Plaintiff concedes in the Amended Complaint that a writ of *coram nobis* is not an available remedy under the circumstances of this case. Dkt. # 23 at 1. The Court agrees. Accordingly, Plaintiff's claim for a writ of *coram nobis* is dismissed with prejudice.

### B. Negligence

Plaintiff argues that Defendant was negligent because U.S. officials failed to come forward with exculpatory evidence that would have assisted him in connection with his arrest, trial, and conviction in the Chinese court.

Defendant argues that Plaintiff's claim of negligence is barred under the FTCA because he has failed to present this claim to the appropriate administrative agency within two years after

the claim accrued. Dkt. # 14 at 6; Dkt. # 24 at 2. Plaintiff responds that he has mailed numerous letters regarding his claim to various U.S. Presidents over the course of many years, and that these letters satisfy the "presentment" requirement set forth in the FTCA. The Court disagrees.

Under applicable regulations, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).[2] Here, although Plaintiff claims to have "repeatedly written, called, and visited the White House" in connection with the issues for which he complains, he claims to have taken these actions not for the purpose of recovering money damages, but "in an effort to request help" from the Clinton, Bush, and Obama administrations. Dkt. # 23 at 3. Indeed, Plaintiff has repeatedly stated that he is *not* seeking monetary damages in connection with his claims. *See, e.g.*, Dkt. # 4 at 7, 15; Dkt. # 23 at 11.[3]

As such, even when crediting Plaintiff's claim that he sent various letters to the President regarding his Chinese imprisonment, Plaintiff's claim of negligence was never "presented" to an appropriate Federal agency for purposes of the FTCA since there is nothing in the record to

---

[2] Although "[t]he terms Federal agency and agency include the executive departments," 28 C.F.R. § 14.1, Plaintiff has not presented any authority suggesting that an administrative claim may be "presented" for purposes of the FTCA by sending a letter directly to the President of the United States. However, because the Court determines that the correspondence in question does not constitute a claim for money damages, it is not necessary for the Court to resolve this issue.

[3] Although the second-to-last sentence of the Amended Complaint states that Plaintiff seeks to recover $50 million as an alternate remedy in the event that Defendant will not help him clear his name, the paragraph directly preceding this request expressly states that Plaintiff "does not seek any monetary damages." Dkt. # 23 at 11. In any event, Plaintiff does not allege having made a prior request for money damages to any Federal agency, which is the relevant inquiry for purposes of presentment under the FTCA.

suggest that those letters were "accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a).

Moreover, the time for Plaintiff to present his negligence claim to an appropriate federal agency has long since passed. Indeed, a cause of action accrues under the FTCA when the facts of the injury and its cause are known to the plaintiff. *United States v. Kubrick*, 444 U.S. 111, 123 (1979). Plaintiff's claim therefore accrued when he was imprisoned in 1983, at which time he clearly was aware that U.S. officials had not come forward with the exculpatory evidence they allegedly promised to provide. Plaintiff had two years from that date to present his claim to the appropriate federal agency, 28 U.S.C. § 2401(b),[4] and his failure to do so deprives this Court of subject matter jurisdiction. *Burns*, 764 F.2d at 724. As such, Plaintiff's negligence claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Court is not persuaded that Plaintiff's failure to timely present his negligence claim is excused under the so-called "discovery rule." Plaintiff specifically argues that, even though he has always believed that his conviction stemmed from the failure of U.S. officials to come forward with exculpatory evidence, it was not until 2008 – when his lawyer obtained "official" Chinese documents regarding his arrest – that he came to possess evidence that his conviction stemmed from the "sham conversation." Even when accepting the truth of these allegations, Plaintiff's negligence claim is still barred because "an FTCA claim accrues when the plaintiff

---

[4] The Court acknowledges that it would be exceedingly difficult – if not impossible – for a person wrongfully detained in a Chinese prison for twelve years to present a claim to a U.S. federal agency within the first two years of his or her sentence. Nevertheless, controlling precedent in this circuit holds that the obligations imposed under 28 U.S.C. § 2401(b) are not subject to equitable tolling. *See, e.g., N. Am. Broad., LLC v. United States*, 306 Fed. Appx. 371, 373 (9th Cir. 2008) (*citing Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008)). Even if Plaintiff's obligations under 28 U.S.C. § 2401(b) had been tolled during his incarceration, however, his negligence claim would still be barred since Plaintiff has *never* presented his negligence claim to an appropriate federal agency.

knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury, *but is not deferred until the plaintiff has evidence of fault.*" *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008) (emphasis added).

In other words, so long as Plaintiff knew at the time of his conviction that U.S. officials had failed to come forward with exculpatory evidence, along with the fact that this failure was the cause of his wrongful conviction, such knowledge constitutes accrual of the claims asserted here – even if Plaintiff first obtained evidence of these claims only years later. This is precisely the fact pattern alleged in the Amended Complaint, and such facts cannot give rise to liability. *Id*.

### C. Fraud

Plaintiff's fraud claim suffers from the same defects underlying his negligence claim. But even if Plaintiff had exhausted administrative remedies with respect to his fraud claim, that claim would still be subject to dismissal because the FTCA expressly precludes actions for misrepresentation. 28 U.S.C. § 2680. As the Ninth Circuit has recognized, "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by 28 U.S.C. § 2680(h)." *Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694, 697 (9th Cir. 1981). Accordingly, Plaintiff's fraud claim is dismissed with prejudice.

### D. Other Claims

Finally, to the extent Plaintiff seeks to assert other causes of action, including claims based upon an alleged deprivation of due process, any such claims are time-barred under the general six-year statute of limitation applicable to claims against the United States. 28 U.S.C. § 2401(a). Indeed, any cause of action stemming from the facts of this case accrued in 1983, when Plaintiff claims he was wrongfully incarcerated. As such, the statute of limitation applicable to

any such claims expired six years later, in 1989. Plaintiff's failure to pursue his claims prior to that time provides yet another reason why his complaint must be dismissed.

### VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. # 14), is GRANTED, and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE. The Court emphasizes that its ruling is based solely upon legal deficiencies underlying the Amended Complaint. The Court has not been presented with any evidence to undermine the allegations of Plaintiff's unfortunate incarceration or the circumstances relating thereto.

Plaintiff's Motion for reconsideration regarding appointment of counsel (Dkt. # 22), is DENIED as moot.

Dated this 23 day of January 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE